# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**U.S. BANK, NATIONAL ASSOCIATION,**
      Plaintiff,

      v.                                    Case No. 13-CV-00072

**UNITED STATES DEPARTMENT OF HOMELAND SECURITY, CUSTOMS AND BORDER PROTECTION,**
      Defendant.

## DECISION AND ORDER

Plaintiff U.S. Bank, National Association ("U.S. Bank") brings this action against the United States Department of Homeland Security, Customs and Border Protection ("CBP") under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. CBP moves to dismiss.

The complaint makes the following allegations: Between 2004 and 2010, U.S. Bank issued a series of promissory notes to and entered into credit agreements with Adaptive Micro Systems, LLC ("Old Adaptive") and its parent company, Adaptive Micro Systems Holdings, Inc. ("AMSHI") (collectively the "Adaptive Entities"). The resulting debts were secured by all of the assets owned by each company, and U.S. Bank perfected its security interest in this collateral by filing UCC Financing Statements with the Wisconsin Department of Financial Institutions. The debts owed by AMSHI were also secured by real estate mortgages on two parcels of real property owned by AMSHI, one in Milwaukee and the other in Jackson, Wisconsin. U.S. Bank recorded the mortgages with the Registers of Deeds in Milwaukee and Washington Counties.

Old Adaptive and AMSHI failed to meet their obligations under the notes and credit agreements, and, on April 26, 2011, U.S. Bank sued in Milwaukee County Circuit Court for judgment on the notes and to foreclose on its liens. In the alternative, U.S. Bank petitioned the court to appoint a receiver under Wisconsin Statutes Chapter 128, which authorizes a court to appoint a receiver to sell a secured creditor's collateral with its liens transferring to the sale proceeds. Wis. Stat. § 128.25(6)(c). The state court appointed a receiver, who sold the business assets of Old Adaptive as a going concern and also sold the two pieces of real property owned by AMSHI. The purchaser of Old Adaptive's assets and the Milwaukee real estate now operates a business substantially similar to Old Adaptive's under the same name ("New Adaptive"). The receiver deposited the proceeds from the sales into a receiver account at U.S. Bank, and the state court authorized U.S. Bank to take possession of the funds and apply them to U.S. Bank's claims against the Adaptive Entities.

On May 5, 2011, the receiver gave CBP notice of the receivership proceedings because CBP was a potential creditor. In response, CBP declined to file a claim in the state court proceeding. However, it sent the receiver and U.S. Bank letters informing them that CBP had a claim against Old Adaptive and AMSHI for $595,659.71 in unpaid customs, duties, taxes and fees and more than $6.8 million dollars in related penalties. The letters stated that it was CBP's position that the United States was entitled to have the unpaid duties and penalties paid first under the Federal Priority Statute, 31 U.S.C. § 3713. The letters warned the receiver that he would be personally liable for any amounts distributed in violation of the statute and informed U.S. Bank that it was CBP's position that U.S. Bank would violate the statute if it took possession of the funds in the receiver account. To

2

facilitate the resolution of the receivership proceedings, U.S. Bank agreed to indemnify the receiver for any claims arising under the Federal Priority Statute. It then took possession of the funds from the receivership sales. U.S. Bank received $5,253,323.35. This was not enough to cover the debts owed by the Adaptive Entities, which added up to more than $14 million.

On May 3, 2012, CBP filed an action in the United States Court of International Trade against the Adaptive Entities and New Adaptive (based on successor liability) to recover the unpaid fees and penalties. That case is still pending. CBP has not filed a lawsuit against either the receiver or U.S. Bank.

Counts I–IV of the complaint seek a declaratory judgment that the U.S. has no rights against U.S. Bank under the Federal Priority Statute on four different grounds. CBP moves to dismiss the complaint for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) and failure to state a claim under Fed. R. Civ. P. 12(b)(6). Its first argument is that this court lacks jurisdiction to hear U.S. Bank's claims under Article III of the Constitution.[1] It claims the allegations in the complaint even if true are not sufficient to prove U.S. Bank has standing to bring this lawsuit. This is a facial challenge to jurisdiction. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). When considering such a challenge, I accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Id.*

---

[1]Article III limits federal courts to deciding "Cases" or "Controversies," U.S. Const. art. III, § 2, cl. 1, and the Declaratory Judgment Act echoes this restriction. It applies only to "a case of actual controversy within [a federal court's] jurisdiction." 28 U.S.C. §§ 2201(a). "[T[he phrase 'case of actual controversy' in the [Declaratory Judgment Act] refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27 (2007).

3

To establish Article III standing, U.S. Bank must show that it is suffering or threatened with an injury that is "'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2752 (2010)). The injury must be actual or imminent "'to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 565 n.2 (1992)).

U.S. Bank argues that it does not have to show it has standing to sue because this is a declaratory judgment action and what matters is that CBP, the natural plaintiff, would have standing if it brought suit against U.S. Bank. I disagree. A plaintiff who seeks a declaratory judgment is required to demonstrate that it has standing to sue just like any other plaintiff. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2757 (3d ed.) ("The [Declaratory Judgment Act] provides that 'any interested party' may seek the declaration and this makes applicable to declaratory actions the general law of standing." (internal citations omitted); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (noting that the question in a declaratory judgment case is "'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment.'" (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 31 U.S. 270, 273 (1941)) (emphasis added)). U.S. Bank cites several cases that require a court to consider the claims that would be brought by the "natural" plaintiff

4

when determining jurisdiction. But these cases do not address the issue of Article III standing. Instead, they consider whether a court has subject-matter jurisdiction because a claim arises under federal law. *See, e.g.*, *NewPage Wis. Sys. Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC*, 651 F.3d 775, 777–78 (7th Cir. 2011) ("If a well-pleaded complaint by the defendant (the 'natural' plaintiff) would have arisen under federal law, then the court has jurisdiction when the 'natural' defendant brings a declaratory-judgment suit.").

Alternatively, U.S. Bank argues that it has standing to bring this lawsuit because the debt it allegedly owes to CBP is growing and will continue to grow until CBP's claims are resolved. U.S. Bank points to 31 U.S.C. § 3717, which requires a federal agency to charge "a minimum annual rate of interest" on outstanding debts owed to the U.S. government, and to charge a penalty of up to "6 percent a year for failure to pay a part of a debt more than 90 days past due." *Id.* § 3717(a)(1) and (e)(2). This argument fails because, as CBP concedes, the statute does not allow the government to charge interest or assess penalties on an alleged debt until it has issued a written demand for payment. *See id.* § 3717(b)(2) ("Interest under subsection (a) of this section accrues from the date notice of the amount due is first mailed to the debtor . . . ."); *see also* 31 C.F.R. § 901.9(b)(1) ("Interest shall accrue from the date of delinquency, or as otherwise provided by law.); 31 C.F.R. § 900.2(b) ("A debt is 'delinquent' if it has not been paid by the date specified in the agency's initial written demand for payment . . . ."). The complaint does not allege that CBP has made a written demand for payment, and U.S. Bank concedes in its brief that it has not received such a demand. Therefore, the alleged debt is not yet accruing interest or penalties, and U.S. Bank is not being injured by CBP's delay in filing suit.

U.S. Bank also claims it has standing because it was forced to agree to indemnify the receiver in order to advance the receivership proceeding in state court. It is not clear how this amounts to an actual or imminent injury to U.S. Bank. If CBP issues a written demand for payment to the receiver or files suit against the receiver, U.S. Bank will be threatened with an imminent injury because it will be liable for any damages awarded against the receiver. But until CBP does one of these things, the possibility of an injury to U.S. Bank remains speculative.

Ultimately, the only harm U.S. Bank was suffering when it filed this action was "the normal uncertainty a defendant experiences while the statute of limitations is running and there is a possibility of a later obligation to pay money damages." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 711–12 (7th Cir. 2002). This injury is not sufficient to give U.S. Bank standing to seek a declaratory judgment. A threat of litigation by itself is not a sufficient injury under Article III. *Id.* at 712 (noting that "the Declaratory Judgment Act 'is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff by winning the proverbial race to the courthouse'" *Id.* (quoting *Terra Nova Ins., Co., Ltd. v. Acer Latin Am., Inc.*, 931 F. Supp. 852, 854–55 (S.D. Fla. 1996)). The result might be different if U.S. Bank had sought a declaratory judgment before it actually took possession of the funds from the receivership sales, but at this point U.S. Bank either is or is not liable under the Federal Priority Statute, and a declaratory judgment is not "a *bona fide* necessity" for U.S. Bank to carry on with its business. *See id.*

Because U.S. Bank has failed to prove it has standing to bring this lawsuit, I will grant CBP's motion to dismiss. There is no need for me to address CBP's alternative grounds for dismissal.

**THEREFORE, IT IS ORDERED** that the motion to dismiss (Docket #22) is **GRANTED**. This case is **DISMISSED** for lack of jurisdiction.

Dated at Milwaukee, Wisconsin, this 6th day of January, 2014.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge

7